René P. Tatro (State Bar No. 78383)
Steven R. Tekosky (State Bar No. 102918)
TATRO TEKOSKY SADWICK LLP
333 S. Grand Avenue, Suite 4270
Los Angeles, CA  90071
Telephone:   (213) 225-7171
Facsimile:   (213) 225-7151
Email:   renetatro@ttsmlaw.com
         stevetekosky@ttsmlaw.com

Attorneys for Plaintiff
Morley Cambridge Tatro

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORLEY CAMBRIDGE TATRO, an individual<br><br>                              Plaintiff,<br><br>             v.<br><br>LAW SCHOOL ADMISSION COUNCIL, INC., a Delaware corporation; and DOES 1-50,<br><br>                              Defendants. | Case No. 2:15-cv-07627-RGK-JEM<br><br>**PLAINTIFF MORLEY CAMBRIDGE TATRO'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:        November 16, 2015<br>Time:        9:00 a.m.<br>Courtroom: 850<br><br>Honorable R. Gary Klausner |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

FACTS ALLEGED IN THE COMPLAINT ...................................................... 2

ARGUMENT ....................................................................................................... 5

    A.    Tatro has pled the existence of a contract under California law and thus has stated a valid claim for breach of contract ................................... 5

        1.    Tatro has adequately pled the existence of an offer. ...................... 5

        2.    Tatro has adequately pled the existence of an acceptance. ........... 6

        3.    Whether a contact was formed is a question of fact that cannot be decided on a motion to dismiss. ................................................. 10

    B.    Tatro has pled a valid claim for breach of the implied covenant of good faith and fair dealing. ...................................................................... 11

        1.    Because a valid contract exists, Tatro can state a claim for breach of the implied covenant of good faith and fair dealing. .............. 11

        2.    Tatro's claim for breach of the implied covenant of good faith and fair dealing is not subject to dismissal as "duplicative." ....... 11

    C.    Tatro has pled a valid claim for declaratory relief. ................................... 13

        1.    Because a valid contact exists, Tatro can state a claim for declaratory relief. ........................................................................... 13

        2.    Tatro's claim for declaratory relief regarding that contract is not subject to dismissal as "duplicative." ....................................... 13

        3.    Tatro's claim for a declaration of the parties' rights and obligations under the Licensing Agreement satisfies the pleading standards. ......................................................................... 14

    D.    If the Court agrees with any of Defendant's arguments, leave to amend should be granted. ..................................................................... 14

i

1
2
CONCLUSION ............................................................................................................ 15
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFF MORLEY TATRO'S OPPOSITION TO DEENDANT'S MOTION TO DISMISS**

# TABLE OF AUTHORITIES

Page

*Federal Cases*

*Anderson v. Blockbuster Inc.*,
    2010 WL 1797249 (E.D. Cal., May 4, 2010) ......................................................... 15

*Celador Intern. Ltd. v. Walt Disney Co.*,
    347 F.Supp.2d 846 (C.D. Cal. 2004) ......................................................... 12

*Davis v. Capitol Records, LLC*,
    2013 WL 1701746 (N.D. Cal., Apr. 18, 2013) ......................................................... 12

*First Nat. Mortg. Co. v. Federal Realty Inv. Trust*,
    631 F. 3d 1058 (9th Cir. 2011) ......................................................... 9

*Frantom v. White*,
    2014 WL 5604148 (C.D. Cal., Oct. 10, 2014) ......................................................... 3

*Grant v. Aurora Loan Services, Inc.*,
    736 F. Supp. 2d 1257 (C.D. Cal. 2010) ......................................................... 9

*IndyMac Resources, Inc. v. Cross*,
    2012 WL 3240006 (C.D. Cal. Aug. 7, 2012) ......................................................... 2, 13

*In re Clawson*,
    434 B.R. 556 (N.D. Cal. 2010) ......................................................... 9

*In re Hurtado*,
    2015 WL 2399665 (E.D. Ca., May 18, 2015) ......................................................... 8

*NLRB v. H. Koch & Sons*,
    578 F.2d 1287 (9th Cir. 1978) ......................................................... 10

*Narramore v. HSBC Bank USA, N.A.*,
    2010 WL 2732815 (D. Ariz., July 7, 2010) ......................................................... 10

*Simonyan v. Ally Financial Inc.*,
    2013 WL 45453 (C.D. Cal., Jan. 3, 2013) ......................................................... 15

**PLAINTIFF MORLEY TATRO'S OPPOSITION TO DEENDANT'S MOTION TO DISMISS**

*Southern California Painters & Allied Trade Dist. Council No. 36 v. Best Interiors, Inc.,*
    359 F.3d 1127 (9th Cir. 2004).......................................................................... 10

*Stoehr v. UBS Securities, LLC,*
    2008 WL 2705575 (N.D. Cal., July 10, 2008)................................................. 10

*StreamCast Networks, Inc. v. IBIS LLC,*
    2006 WL 5720345 (C.D. Cal., May 2, 2006) .................................................. 13

*Wilson v. City of Fountain Valley,*
    2004 WL 3383623 (C.D. Cal., Sept. 1, 2004) ................................................ 15

*State Cases*

*Brawley v. Crosby Research Foundation,*
    73 Cal. App. 2d 103 (1946) ............................................................................ 9

*Bustamante v. Intuit, Inc.,*
    141 Cal. App. 4th 199 (2006) ........................................................................ 7

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,*
    222 Cal. App. 3d 1371 (1990) ....................................................................... 12

*Chen v. Interinsurance Exchange of Auto. Club,*
    164 Cal. App. 4th 117 (2008) ........................................................................ 8

*Donovon v. RRL Corp.,*
    26 Cal.4th 261 (2001) ................................................................................. 6, 7

*Foley v. Interactive Data Corp.,*
    47 Cal. 3d 654 (1988) .................................................................................... 11

*Harris v. Rudin, Richman & Appel,*
    74 Cal. App. 4th 299 (1999) .......................................................................... 10

*Kruse v. Bank of America,*
    202 Cal. App. 3d 28 (1988) ........................................................................... 7

*Kuhn v. Dept. of General Services,*
    22 Cal. App. 4th 1627 (1994)........................................................................ 11

**PLAINTIFF MORLEY TATRO'S OPPOSITION TO DEENDANT'S MOTION TO DISMISS**

*Smissaert v. Chiodo,*
      163 Cal. App. 2d 827 (1958) ........................................................................ 8

*Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.,*
      103 Cal. App. 4th 30 (2002) ........................................................................ 9


*Statutes*

Cal. Civ. Code § 1542 ........................................................................................ 8


*Other*

1 Corbin, Contracts (rev. ed.1993) § 2.2, p. 105 ............................................... 6

1 Farnsworth, Contracts (2d ed.1998) § 3.10, p. 237 ....................................... 6

1 Witkin, Contracts, § 119, p. 144 ..................................................................... 6

**PLAINTIFF MORLEY TATRO'S OPPOSITION TO DEENDANT'S MOTION TO DISMISS**

## **INTRODUCTION**

Plaintiff Morley Cambridge Tatro ("Tatro"), who operates a sole proprietorship producing and selling preparation materials for the law school admission test ("LSAT"), has pled the existence of a valid contract with defendant Law School Admission Council, Inc. ("Defendant"), which is the only company that publishes and administers the LSAT. The Complaint does not merely allege an "agreement to negotiate," as Defendant argues in its motion to dismiss (Doc. 15-1 at 1:15); it alleges a valid contract under California law.

In his Complaint, Tatro alleged that he made (and in fact did make) a valid offer to Defendant, with specific and unambiguous terms, as follows: that the claims that each party has against the other notwithstanding, (1) the parties exchange mutual general releases releasing those claims, and (2) Tatro thereupon ceases using any LSAT content purportedly owned by Defendant. In arguing that Tatro did not make a valid offer, but made only a "proposal to engage in negotiations" (Doc. 15-1 at 7:4-5), Defendant improperly ignores the actual offer alleged in the Complaint, and relies instead on a transition sentence in a letter he wrote.

Likewise, Tatro alleged in his Complaint that Defendant accepted Tatro's offer (and Defendant did in fact accept it). While Defendant first argues (incorrectly) that "there was no agreement about any of the terms" that Tatro proposed (Doc. 15-1 at 8:2-3), Tatro in fact alleged—and Exhibit B to his Complaint shows—that Defendant agreed to the very terms that Tatro proposed. And while Defendant next argues (again incorrectly) that the language at the end of its acceptance, "…provided we can agree upon an appropriate release," negates the acceptance set forth in the beginning of the sentence because it was conditioned on the parties reaching "agreement regarding the specific content of the release" (Doc. 15-1 at 8:6-7), the "specific content" of the release was already set forth in the offer and the acceptance thereof: "simple, mutual, general releases." As a matter of California law, a mutual general release is a release of all claims that each party knows or suspects he has against the other. And as California law holds,

where, as here, the essential terms of an agreement are agreed upon in writing, there is a binding contract, even if the parties intend to execute a formal writing thereafter.

By its motion to dismiss, Defendant improperly asks the Court to decide a question of fact about the parties' intentions regarding the term "mutual general release." Even if the parties' intent to enter into a binding contract were unclear, this is a question of fact for the jury to determine at trial, not at the pleading stage.

For these reasons, Defendant's motion to dismiss Tatro's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief based on his purported failure to plead the existence of a valid contract should be denied.  Equally meritless is Defendant's argument that Tatro's claims for breach of the implied covenant of good faith and fair dealing and declaratory relief should be dismissed as duplicative; neither claim overlaps entirely with the claim for breach of contract, as explained below.

Finally, Defendant's request that the Court dismiss Tatro's Complaint without leave to amend is improper and should not be granted.  Tatro's Complaint was filed in California state court, which has different pleading standards than federal court. Defendant removed the action to this Court based on diversity jurisdiction (although the amount in controversy may not be satisfied, and a motion to remand may be filed). Even with respect to complaints initially filed in federal court, the Ninth Circuit has a liberal policy favoring amendments, and numerous cases hold that leave to amend should be freely granted.  Accordingly, if the Court agrees with any of Defendant's arguments, Tatro respectfully requests leave to amend his Complaint, including to comply with the federal pleading standards.

## FACTS ALLEGED IN THE COMPLAINT

In considering Defendant's motion to dismiss, the Court must accept as true the well-pled facts presented in the pleadings and construe all factual inferences in the light most favorable to Tatro.  *IndyMac Resources, Inc. v. Cross*, 2012 WL 3240006 at *2 (C.D. Cal. Aug. 7, 2012).  Those facts are as follows:

Plaintiff Morley Cambridge Tatro is an individual who operates a sole proprietorship under the dba Cambridge LSAT.  Complaint ¶ 2 and Exh. A thereto. Since 2009, Tatro has produced and sold law school examination test ("LSAT") preparation materials through the Cambridge LSAT website, supporting his family with the earnings.  Complaint ¶ 2.  To prepare his materials, Tatro has licensed questions from previously administered LSAT examinations from Defendant pursuant to a written License Agreement and Licensing Policy (collectively, "Licensing Agreement"). Complaint ¶ 2 and Exhs. A & D thereto.

As explained in the letter attached as Exhibit A to the Complaint, after Defendant imposed ever-increasing and burdensome requirements and restrictions on Tatro, all of which he complied with while running a small, one-employee business, Defendant breached the Licensing Policy—which requires that Defendant provide its licensees, such as Tatro, with an opportunity to cure any breach within 30 days before a license may be terminated—by purporting to terminate its Licensing Agreement with Tatro without providing Tatro with any cure period or any opportunity to cure. Complaint ¶ 6 and Exh. A at p.2.[1]

Tatro then wrote to Defendant on August 15, 2015.  Complaint, Exh. A.  He explained how Defendant had breached the Licensing Agreement, and acknowledged that if Defendant "had fully performed its contract and had not breached, [Defendant]

---

[1] In its motion to dismiss, Defendant erroneously—and wrongfully—asserts that "[Tatro] repeatedly used the LSAT Questions in violation of [Defendant's] security and other policies," which is a contested fact.  Doc. 15-1 at 2:25-26.  This assertion may not be considered by the Court in deciding Defendant's motion, because it is not alleged in the Complaint or included the attachments thereto.  Defendant attempts to mislead the Court by citing to Exhibit A to the Complaint (a letter from Tatro to Defendant) as support.  Doc. 15-1 at 2:28.  But these alleged "facts" are not included in Exhibit A. Defendant's suggestion that, because Tatro's letter states that it is in response to Defendant's August 4, 2015 letter, and because these assertions allegedly were set forth in that August 4 letter, Defendant is free to include them in its brief (*see id.*), unquestionably is wrong.  *See Frantom v. White*, 2014 WL 5604148, at *2 (C.D. Cal., Oct. 10, 2014), report and recommendation adopted (C.D. Cal., Oct. 31, 2014). ("The Court ordinarily considers only the four corners of the complaint when deciding a motion to dismiss.").  Defendant has not sought judicial notice of its August 4 letter, which is neither attached to the Complaint nor described therein.  Accordingly, there is no reason to depart from this general rule.

might have a claim against [Tatro] for license fees." Complaint, Exh. A. He proposed creative, practical ways in which the parties might continue to work together, including through employment, consulting, or even acquisition. *Id.* at p.2. Tatro then addressed how the parties might go their separate ways notwithstanding their claims against each other, if Defendant was not interested in continuing to work together. *Id.*

Tatro concluded his letter by making Defendant a written offer for a contract. Complaint ¶ 6 and Exh. A at p.2. His offer specified the essential terms, which were that, the claims against each other notwithstanding, (1) the parties exchange mutual general releases, and (2) Tatro will thereafter cease distributing Defendant's content. *Id.* and Exh. A at p.2. Tatro made this offer even though it will be difficult, if not impossible, to obtain the same caliber of test preparation since there is only one publisher of the LSAT, *i.e.*, Defendant, and only one such test for admission to law school. Complaint ¶ 1.

Defendant responded by e-mail on August 19, 2015, accepting Tatro's offer. Complaint ¶ 6 and Exh. B thereto. Specifically, Defendant wrote that it was "willing to terminate our relationship with you and your company according to the terms you have proposed, provided we can agree upon an appropriate release. If you have language for such a release in mind, please provide it." Complaint, Exh. B. On August 20, 2015 Tatro promptly performed his part of the contract by providing a signed mutual general release on August 20, 2015. Complaint ¶ 6 and Exh. C thereto. Defendant has refused to perform the contract, and has breached it. Complaint ¶ 6. Defendant also threatened legal action against Tatro in the state of Pennsylvania. *Id.* ¶ 9.[2]

/ / /

/ / /

/ / /

---

[2] In further violation of the contract, after Plaintiff filed this suit, Defendant in fact subsequently initiated a separate action in Pennsylvania for claims that were encompassed in the mutual general release for which the parties contracted.

Tatro Tekosky
Sadwick LLP
ATTORNEYS AT LAW

4

# ARGUMENT

**A.**     **Tatro has pled the existence of a contract under California law and thus has stated a valid claim for breach of contract.**

Contrary to Defendant's arguments, Tatro has adequately pled the existence of a contract under California law.  As explained below, Tatro has adequately alleged that he made (and in fact did make) a valid offer to Defendant.  As also explained below, Tatro has adequately alleged that Defendant accepted (and Defendant in fact did accept) Tatro's offer.  Thus, Defendant's motion to dismiss Tatro's claim for breach of contract should be denied.

**1.**     **Tatro has adequately pled the existence of an offer.**

As pled in the Complaint, and as the letter attached as Exhibit A thereto reflects, Tatro made a clear and unequivocal offer to Defendant.  His offer was as follows:

1.  Both sides go their separate ways pursuant to simple, mutual, general releases.
2.  I will, upon written confirmation of the agreement, cease distributing LSAC's content on both the website and in book form.

Complaint, Exh. A at p.2.  In arguing that Tatro did not make a valid offer under California contract law, Defendant nowhere mentions the actual offer.  *See* Doc. 15-1 at 7:3-19.  Instead, Defendant cites a transition sentence in Tatro's letter in which Tatro turned from a discussion of ways in which the parties might continue to work together, to a discussion (including the offer quoted above) of the parties going their separate ways.  Tatro began that final part of his letter as follows:  "In the event [Defendant] is uninterested in any such structure [in which the parties continue to work together], we should turn our attention to the terms on which we can part company."  Complaint, Exh. A at p.2.  Tatro then turns his attention to such terms, concluding with the offer quoted above.

In asking the Court to adjudicate (before discovery) that Tatro's letter does not include a valid offer under California contract law and dismiss his claim for breach of

Tatro Tekosky
Sadwick LLP
ATTORNEYS AT LAW

5

contract on this basis, Defendant argues that the words "we should turn out [sic] attention to the terms on which we can part company," are "nothing more than a proposal to engage in negotiations." Doc. 15-1 at 7:4-5. But this transition sentence unquestionably is not itself the offer; the Complaint alleges that "[t]he terms of the offered contract were simple: the claims against each other notwithstanding, the parties would exchange mutual general releases releasing those claims, and [Tatro] would thereupon cease using any content purportedly owned by LSAC." Complaint, ¶ 7 at p.3:7-10. This offer (not the transition sentence quoted by Defendant) is a valid offer under California law; Defendant neither argues that it is not, nor cites any law suggesting it is not.

The inclusion of the transition sentence, moreover, does not negate the validity of the offer that follows. Defendant cites no law so holding. Instead, Defendant cites only inapposite cases that provide no support for its position here. For example, in *Donovon v. RRL Corp.*, 26 Cal.4th 261 (2001), the court held that a newspaper advertisement for a vehicle at a specified price constituted a valid offer, but rescission of the contract was warranted under the circumstances based on the dealership's unilateral mistake in the price listed. As the *Donovon* court explained,

> The determination of whether a particular communication constitutes an operative offer, rather than an inoperative step in the preliminary negotiation of a contract, depends upon all the surrounding circumstances. (1 Corbin, Contracts (rev. ed.1993) § 2.2, p. 105.) The objective manifestation of the party's assent ordinarily controls, and the pertinent inquiry is whether the individual to whom the communication was made had reason to believe that it was intended as an offer. (1 Witkin, *supra,* Contracts, § 119, p. 144; 1 Farnsworth, Contracts (2d ed.1998) § 3.10, p. 237.)

26 Cal. 4th at 271. Here, the exhibits to the Complaint show that, notwithstanding Defendant's *ex post facto* interpretation, Defendant's contemporary response to Tatro's letter ("we are willing to terminate our relationship with you and your company according to the terms you have proposed") (Complaint, Exh. B), demonstrates that

Tatro Tekosky
Sadwick LLP
ATTORNEYS AT LAW

6

**PLAINTIFF MORLEY TATRO'S OPPOSITION TO DEENDANT'S MOTION TO DISMISS**

Defendant not only "had reason to believe that [Tatro's letter] was intended as an offer," but actually believed that Tatro had made an offer. *Donovon*, 26 Cal. 4th at 271.[3]

**2.  Tatro has adequately pled the existence of an acceptance.**

Defendant's arguments about acceptance are equally erroneous.

First, Defendant asserts that there was no acceptance because "there was no agreement about any of the terms" that Tatro proposed; Defendant claims that its response was not a "mirror image of Plaintiff's two bullet points," but merely an agreement "to the principle of a mutual release of claims that Plaintiff proposed…." Doc. 15-1 at 8:2-6.  But here is how Defendant actually began its response to Tatro's offer:  "we are willing to terminate our relationship with you and your company ***according to the terms you have proposed***, …"  Complaint, Exh. B (emphasis added).  Defendant thus indicated its acceptance of the very same two terms that Tatro offered, *i.e.*, that (1) the parties would exchange "simple, mutual, general releases" releasing the claims each had against the other, and (2) Tatro would thereupon "cease distributing LSAC's content on both the website and in book form."  Complaint, Exh. A at p.2.

Second, Defendant argues that the language at the end of its acceptance, "…provided we can agree upon an appropriate release," negates the acceptance set forth in the beginning of the sentence.  Doc. 15-1 at 8:9-13.  Defendant argues— erroneously—that it did not legally accept Tatro's offer because, while it "agreed to the

---

[3] The other cases cited by Defendant do not support its argument that Tatro did not make a valid offer.  In *Kruse v. Bank of America*, 202 Cal. App. 3d 28, 59 (1988), the court held that a claim for bad faith denial of a contract for a long-term loan cannot stand where the manager of defendant Bank was merely "'working on' obtaining the necessary approval from his superiors," but "[t]he Bank's manifestation of assent never materialized."  Likewise, in *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 213 (2006), the Court determined that the parties had not formed a joint venture, where, *inter alia*, "there was no expression of mutual consent to create a company without investor financing, which in turn could not be obtained without first ironing out the details of the contemplated network of relationships."

principle of a mutual release of claims that Plaintiff proposed," it so agreed "only if the parties could reach agreement regarding the specific content of the release."  Doc. 15-1 at 8:6-7.

Defendant is wrong because the "specific content" of the release was already set forth in the offer and the acceptance thereof:  "simple, mutual, general releases." Complaint, Exh. A at p.2.  Unlike, for example, a limited release in which the parties must reach agreement on the specific limited claims that will be released, as a matter of California law, a mutual general release is a release of ***all*** claims that each party knows or suspects he has against the other.  *See Chen v. Interinsurance Exchange of Auto. Club*, 164 Cal. App. 4th 117, 122 (2008), *as modified on denial of reh'g* (July 21, 2008) ("Civil Code section 1542 provides that a general release does not affect unknown claims; by implication, a general release thus covers all known claims.").  *See also* Cal. Civ. Code § 1542 ("A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.").

In the analogous case of *In re Hurtado*, 2015 WL 2399665 (E.D. Ca., May 18, 2015), the court held that e-mails exchanged between the parties addressing the settlement of a dispute between them "support a finding of an offer an acceptance that created an enforceable contract" (*id.* at *8), even though—similar to Defendant's wording here—the final e-mail accepted the offer "pending finalization of the settlement agreement terms."  *Id.* at *4.  The court explained that "[t]he fact that the parties contemplated memorialization does not necessarily suggest that the discussion between the parties was a preliminary negotiation that did not create an enforceable contract."  *Id.* at *8.  "Where the writing at issue shows 'no more than an intent to further reduce the informal writing to a more formal one,'" the court continued, "the failure to follow it with a more formal writing does not negate the existence of the prior contract."  *Id.  See also Smissaert v. Chiodo,* 163 Cal. App. 2d 827, 830 (1958) ("[w]here all of the essential terms of an agreement are definitely agreed upon in the writing there is a binding

contract even though there is an intention that a formal writing will be executed later").
As the Ninth Circuit confirmed, under California law, "an agreement is not unenforceable merely because it is subject to the approval of a formal contract." *First Nat. Mortg. Co. v. Federal Realty Inv. Trust,* 631 F. 3d 1058, 1065 (9th Cir. 2011).

Here, while Defendant's response to Tatro similarly reflected an intent to reduce the terms set forth in his letter and Defendant's reply e-mail into a written agreement, there was nothing more to be negotiated by way of the mutual general release: Defendant agreed to release all claims it knew or suspected it had against Tatro, and Tatro agreed to release all claims it knew or suspected it had against Defendant. Although the parties had not yet put that into a written agreement, **they had agreed to these straightforward terms**.

None of the cases cited by Defendant involves an agreement to enter into a mutual general release, and none is apposite. *See Grant v. Aurora Loan Services, Inc.,* 736 F. Supp. 2d 1257, 1266 (C.D. Cal. 2010) ("[P]laintiff's allegation that [Defendant lender] 'offered' to consider a short sale in lieu of foreclosure if he submitted suitable documentation, at most, constituted a promise to enter into a future agreement."); *Brawley v. Crosby Research Foundation*, 73 Cal. App. 2d 103, 116 & 119 (1946) (rejecting contention that exclusive licensing agreement was an unenforceable agreement to enter into a future agreement, reversing judgment and remanding "with directions to the court below to enter judgment declaring the contract valid."); *In re Clawson*, 434 B.R. 556, 569 (N.D. Cal. 2010) (holding that "bankruptcy court abused its discretion when it refused to hold an evidentiary hearing regarding whether the banks consented to the terms of the settlement agreement and also regarding whether the banks' counsel possessed the authority to settle on the terms contained in the agreement."); *id.* at 570 ("the evidence before the bankruptcy court and before this court in the record on appeal—without more—does not sufficiently demonstrate that the banks had consented to the settlement agreement."); *Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.*, 103 Cal. App. 4th 30, 36-37 (2002) (evidence established that documents constituted "unilateral offers

to settle that were revocable until accepted by the tender of payment" and, in any event, were not enforceable as settlement agreement under section 664.6 of the California Code of Civil Procedure because, at the time they were prepared, they called for the signature of only one party, and not both, as required by section 664.6); *Stoehr v. UBS Securities, LLC,*, 2008 WL 2705575, at *3 (N.D. Cal., July 10, 2008) (defendant's letter to plaintiff did not constitute an agreement where such letter "explicitly referenced the need to agree, at some point in the future, on payment amounts for transactions that, at the time of the letter, were still mere possibilities."); *Narramore v. HSBC Bank USA, N.A.* 2010 WL 2732815, at *5 (D. Ariz., July 7, 2010) (complaint failed to allege breach of contract claim based on purported agreement to modify loan where plaintiff did "not allege that any written agreement to negotiate existed" and there was "no allegation in the Complaint that any discussion with the [Defendant's] agent included a statement that the negotiations would take place in good faith.").

### 3.  <u>Whether a contract was formed is a question of fact that cannot be decided on a motion to dismiss.</u>

In its motion to dismiss, Defendant has—at most—raised a question ***of fact*** regarding the parties' intentions regarding the term "mutual general release."  Even if the parties' intent to enter into a binding contract were unclear, this is a question of fact for the jury to determine at trial, not at the pleading stage.  *See Southern California Painters & Allied Trade Dist. Council No. 36 v. Best Interiors, Inc.,* 359 F.3d 1127, 1134 (9th Cir. 2004) ("Whether or not the parties entered into an agreement is essentially a question of fact.") (*quoting NLRB v. H. Koch & Sons,* 578 F.2d 1287, 1290 (9th Cir. 1978)); *Harris v. Rudin, Richman & Appel*, 74 Cal. App. 4th 299, 308 (1999) (trial court erred in sustaining demurrer and dismissing claim for breach of agreement that was stated in an informal letter but not in a formal contract, because "[w]hether the parties intended their communications to be a binding [ ] agreement or an agreement to further negotiate after a formal draft was prepared is a factual question not properly the subject of a demurrer.").

**B.**   **Tatro has pled a valid claim for breach of the implied covenant of good faith and fair dealing.**

    **1.**   **Because a valid contract exists, Tatro can state a claim for breach of the implied covenant of good faith and fair dealing.**

Because Tatro has alleged a valid contract between the parties, he has alleged a valid claim for breach of the covenant of good faith and fair dealing implied in that contract.  "'There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'"  *Foley v. Interactive Data Corp.,* 47 Cal. 3d 654, 684 (1988).  As the California Supreme Court explained in *Foley*, "[t]he covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes."  *Id.* at 690.  The obligations imposed by the covenant are "measured by the provisions of the particular agreement at issue." *Kuhn v. Dept. of General Services*, 22 Cal. App. 4th 1627, 1637 (1994).

    **2.**   **Tatro's claim for breach of the implied covenant of good faith and fair dealing is not subject to dismissal as "duplicative."**

Such claim, moreover, is not subject to dismissal for purportedly being "duplicative" of the breach of contract claim, as Defendant argues.  In the Complaint, Tatro's allegations regarding Defendant's breach of the implied covenant of good faith and fair dealing differ from his allegations regarding breach of contract.  Specifically, Tatro alleged that Defendant breached the contract between the parties by refusing to provide Tatro with the mutual general release required by the parties' contract, following which Tatro will cease distributing Defendant's content.  Complaint ¶ 15.  In contrast, in stating a claim for breach of the implied covenant of good faith and fair dealing, Tatro alleged that Defendant "attempt[ed] to frustrate [his] ability to receive benefits under the Contract to which he is entitled by 1) stating its intention to sue Plaintiff in Pennsylvania on matters released by the Contract" (and now, by subsequently suing in Pennsylvania) and by "fail[ing] to act in good faith."  Complaint ¶¶ 19, 21.  While Defendant bases its

motion to dismiss on the fact that each claim for relief in the Complaint incorporates the previous allegations in the Complaint, this is done routinely in pleadings, and does not render the two claims duplicative.

"A claim for breach of the implied covenant of good faith and fair dealing is not duplicative of a breach of contract claim when a plaintiff alleges that the defendant acted in bad faith to frustrate the benefits of the alleged contract." *Davis v. Capitol Records, LLC*, 2013 WL 1701746, at *4 (N.D. Cal., Apr. 18, 2013). *See also Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (refusal to discharge contractual responsibilities which unfairly frustrates the agreed common purposes and reasonable expectations of the other party constitutes claim for breach of good faith and fair dealing, whether or not it also constitutes breach of a consensual term).

As the *Celador Intern. Ltd. v. Walt Disney Co.*, 347 F.Supp.2d 846 (C.D. Cal. 2004), court explained in addressing a similar argument by the defendants that, "because the claim is based on the same facts as the breach of contract claim and seeks the same remedy, it is superfluous," "such claims will always be based on the same facts; a certain set of circumstance gives rise to a lawsuit. They will always seek the same remedy; the same remedies are available for both claims. Therefore, the Court should not mechanically inquire whether the same facts are alleged and whether the same remedy is sought." *Id.* at 853.  Rather, the *Celador Intern.* court explained, the relevant inquiry is whether the two claims can be distinguished.  The *Celador Intern.* court concluded that the plaintiffs distinguished the two claims where "Plaintiffs allege that Defendants' actions breached the contract. If not, the actions, allegedly taken in bad faith, frustrated the actual benefits of the contract.  [Citation to case allowing leave to amend to make such a distinction].  The breach of the covenant of good faith and fair dealing claim, therefore, is not superfluous." *Id.*

/ / /

/ / /

/ / /

Tatro Tekosky Sadwick LLP
ATTORNEYS AT LAW

**PLAINTIFF MORLEY TATRO'S OPPOSITION TO DEENDANT'S MOTION TO DISMISS**

**C.**     **Tatro has pled a valid claim for declaratory relief.**

    **1.**   **Because a valid contract exists, Tatro can state a claim for declaratory relief.**

While Defendant argues that the Court cannot declare rights and obligations arising out of a non-existent contract, because Tatro has alleged a valid contract between the parties, as discussed in Argument section A, above, Tatro has alleged a valid claim for declaratory relief regarding the parties' rights and obligations under that contract.

    **2.**   **Tatro's claim for declaratory relief regarding that contract is not subject to dismissal as "duplicative."**

Defendant is wrong that Tatro's claim for declaratory relief should be dismissed as duplicative of the breach of contract claim to the extent it seeks a declaration of the parties' rights under the contract discussed above.  Declaratory relief is appropriate where a breach of contract claim will not settle all of the contractual issues concerning which plaintiff seeks declaratory relief.  *StreamCast Networks, Inc. v. IBIS LLC*, 2006 WL 5720345, at *4-5 (C.D. Cal., May 2, 2006) (denying motion to dismiss declaratory relief claim as duplicative where it sought a different forms of relief than the breach of contract claim).  *See also IndyMac Resources, Inc. v. Cross,* 2012 WL 3240006, at *7 (C.D. Cal., Aug. 7, 2012) ("Plaintiff has sufficiently alleged facts for its cause of action for breach of contract; thus, Plaintiff has shown a real and substantive controversy that may be remedied by declaratory relief.").

In the Prayer for Relief, Tatro seeks the following with respect to the breach of contract claim:  "As to the first cause of action, for an order requiring Defendant LSAC to perform its obligations under the Contract by providing Tatro with a signed mutual general release complaint with California law substantially in the form of Exhibit C, and to pay Plaintiff damages caused by Defendants breach, in an amount to be determined at trial."  Complaint, Prayer for Relief ¶ A.  In contrast, Tatro seeks the following with respect to the claim for declaratory relief:  "As to the third cause of action, for a judicial determination and declaration as follows:  any claims Defendant purports to have against

Plaintiff pursuant to the Licensing Agreement or any statute or common law claim are released pursuant to the Contract, or are otherwise unenforceable."  *Id.* ¶ C.

### 3.  <u>Tatro's claim for a declaration of the parties' rights and obligations under the Licensing Agreement satisfies the pleading standards</u>.

Defendant's request that the Court dismiss without leave to amend, for failure to plead with sufficient specificity to satisfy the federal pleading standards, the portion of Tatro's claim for declaratory relief regarding the Licensing Agreement, is wholly inappropriate.  Defendant removed this action from California state court,[4] which has different pleading standards than Federal Court.  While Defendant argues that Tatro did not sufficiently allege how Defendant breached the Licensing Agreement, Defendant's breach is set forth in Exhibit A to the Complaint, which is incorporated in the Complaint.  Complaint ¶ 7.  Therein, it is explained that Defendant breached the provision set forth in Paragraph 5 of the "License Restrictions" section of the Licensing Policy (at p.4) requiring Defendant to provide 30 days to cure any purported violation of a material term or condition of the license before it may be terminated.  Complaint, Exh. A at p.1.

### D.  <u>If the Court agrees with any of Defendant's arguments, leave to amend should be granted</u>.

However, if the Court believes that Tatro's declaratory relief claim should be more specific to satisfy the federal pleading standards, Tatro should be granted leave to amend add that specificity; Defendant's naked assertion that it did not breach the Licensing Agreement (which it drafted, and thus must be interpreted against Defendant) because of the provision in Paragraph 2 regarding termination must be rejected at the pleading stage, and where Defendant does not even attempt to demonstrate why it is not obligated to comply with the cure provisions of the Licensing Policy, which are

---

[4] Tatro is looking into whether the amount in controversy is actually satisfied, and whether a motion to remand might be appropriate

**PLAINTIFF MORLEY TATRO'S OPPOSITION TO DEENDANT'S MOTION TO DISMISS**

incorporated into the Licensing Agreement.  *See* Complaint Exh. A at p.1 (opening paragraph).

 "Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted." *Simonyan v. Ally Financial Inc.*, 2013 WL 45453, at *2 (C.D. Cal., Jan. 3, 2013).  "[L]eave to amend is only denied when it is **clear** that the deficiencies of the complaint cannot be cured by amendment." *Anderson v. Blockbuster Inc.*, 2010 WL 1797249, at *4 (E.D. Cal., May 4, 2010) (emphasis added).  "Leave to amend is usually granted after a Rule 12 motion to dismiss unless amendment would be futile." *Wilson v. City of Fountain Valley*, 2004 WL 3383623, at *1 (C.D. Cal., Sept. 1, 2004).

If the Court agrees with any of Defendant's arguments, leave to amend should be granted.  Again, this Complaint was filed in California state court, and was removed to this Court by Defendant based on diversity jurisdiction.  Assuming the case is not remanded for failure to meet the amount in controversy, Tatro should be granted leave to amend his complaint to comply with the federal pleading standards, to the extent the Court finds that he has not already done so.

## CONCLUSION

For the foregoing reasons, Tatro respectfully requests that Defendant's motion to dismiss be denied in its entirety.  In the alternative, Tatro respectfully requests that leave to amend the Complaint be granted.


 Date:  October 26, 2015                    TATRO TEKOSKY SADWICK LLP


                                            By:  ____/s/ René P. Tatro_____
                                                 René P. Tatro, Esq.
                                                 Attorney for Plaintiff
                                                 Morley Cambridge Tatro

Tatro Tekosky
Sadwick LLP
ATTORNEYS AT LAW

**PLAINTIFF MORLEY TATRO'S OPPOSITION TO DEENDANT'S MOTION TO DISMISS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of October, 2015, I electronically filed

**PLAINTIFF MORLEY CAMBRIDGE TATRO'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

with the Clerk of the court using the CM/ECF system, which will send a notification
of such filing (NEF) to the following**:**

Monique E. Cho
Morgan, Lewis & Bockius LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA  90071-3132
mcho@morganlewis.com

Anita B. Polott
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2541
apolott@morganlewis.com

John V. Gorman
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921
jgorman@morganlewis.com

/s/ *Karen L. Roberts*
Karen L. Roberts