UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-07627 RGK (JEMx) | Date | November 19, 2015 |
|---|---|---|---|
| Title | *Morley Cambridge Tatro v. Law School Admission Council, Inc.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED.STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Defendant's Motion to Dismiss (DE 15)


**I.      INTRODUCTION**

On August 31, 2015, Morley Cambridge Tatro ("Plaintiff") filed suit against Law School Admission Counsel Inc. ("Defendant") in Los Angeles County Superior Court, alleging: (1) Breach of Contract, (2) Breach of the Implied Covenant of Good Faith and Fair Dealing, and (3) Declaratory Relief. On September 29, 2015, Defendant removed the action to federal court based on diversity jurisdiction.

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint. For the reasons set forth below, the Court **GRANTS** Defendant's Motion.

**II.     FACTUAL BACKGROUND**

Plaintiff operates a sole proprietorship producing and selling preparation materials for the Law School Admission Test ("LSAT"). Defendant is a non-profit corporation that administers the LSAT.

To create the test preparation materials that comprise his business, Plaintiff licenses from Defendant questions that have appeared on previously administered LSAT exams. The parties have engaged in these licensing agreements since 2009.

On July 15, 2015, the parties entered into the latest licensing agreement ("Licensing Agreement"). The agreement, however, was short-lived, as Defendant soon discovered alleged violations, and, on August 4, 2015, informed Plaintiff that it would be terminating his license to use its LSAT questions.

In response, Plaintiff sent Defendant a letter on August 15, 2015 ("Letter"), in which he proposed that they terminate their relationship according to the following terms:

> 1. Both sides go their separate ways pursuant to simple, mutual general releases.
>
> 2. I will, upon written confirmation of the agreement, cease distributing LSAC's content on both the website and in book form.

(Compl., Ex. A, ECF No. 1.)

Defendant replied with an email on August 19, 2015 ("Email"), which stated, "[W]e are willing to terminate our relationship with you and your company according to the terms you have proposed, provided we can agree upon an appropriate release. If you have language for such a release in mind, please provide it." (Compl., Ex. B, ECF No. 1.)

The next day, August 20, 2015, Plaintiff provided a general release for Defendant's consideration. (Compl., Ex. C, ECF No. 1.) Defendant declined to sign the proposed release, spawning the instant action.

Plaintiff alleges that the parties entered into a valid, binding contract, which Defendant breached by refusing to sign the proposed release. Specifically, Plaintiff contends that his August 15 Letter constitutes an offer, which Defendant accepted with its August 19 Email, thereby creating a legally binding contract. Moreover, Plaintiff claims that Defendant then breached that contract by refusing to sign the general release.

### III. JUDICIAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable. *Id*. A plaintiff need not provide detailed factual allegations but must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. When ruling on a Rule 12(b)(6) motion, the court must accept the allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

### IV. DISCUSSION

Plaintiff alleges the following claims: (1) Breach of Contract, (2) Breach of the Implied Covenant of Good Faith and Fair Dealing, and (3) Declaratory Relief.

#### A. Exhibits Attached to the Complaint

Before proceeding to analyze the claims, the Court notes that it will consider the Letter and Email attached to the complaint in deciding the instant motion. (*See* Compl., Exs. A-B, ECF No. 1.) "Under the 'incorporation by reference' doctrine in [the Ninth] Circuit, 'a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment.'" *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (quoting *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**B.     Breach of Contract**

A plaintiff alleging breach of contract must establish (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) breach by defendant, (4) causation of damages. *Wall Street Network, Ltd. v. N.Y. Times Co.,* 164 Cal. App. 4th 1171, 1178 (2008).

Because the Court concludes below that Plaintiff has not adequately pled the existence of a contract, it need not reach the remaining elements.

1.     *Existence of a Contract*

It is a fundamental tenet of contract law that formation of a contract requires mutual assent, consisting of offer and acceptance. *Lopez v. Charles Schwab & Co.*, 13 Cal. Rptr. 3d 544, 548 (Ct. App. 2004) ("Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror.") (citation omitted).

Defendant argues that Plaintiff has failed to adequately plead offer and acceptance.

a.     *Offer*

"An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *City of Moorpark v. Moorpark Unified Sch. Dist.*, 819 P.2d 854, 860 (Cal. 1991) (citation omitted). "The determination of whether a particular communication constitutes an operative offer, rather than an inoperative step in the preliminary negotiation of a contract, depends upon all the surrounding circumstances." *Donovan v. RRL Corp.*, 27 P.3d 702, 709 (Cal. 2001) (citation omitted).

Plaintiff alleges that his Letter is a valid offer because it contains clear, unequivocal terms:

> 1. Both sides go their separate ways pursuant to simple, mutual general releases.
>
> 2. I will, upon written confirmation of the agreement, cease distributing LSAC's content on both the website and in book form.

(Compl., Ex. A, ECF No. 1.)

Defendant contends that the Letter does not qualify as an offer because it lacks specificity and merely invites the parties to engage in negotiations. Specifically, Defendant points to another portion of the Letter where Plaintiff states, "[W]e should turn our attention to the terms on which we can part company." (*Id.*) Seizing on this language, Defendant argues that the Letter merely encourages the parties to engage in preliminary negotiations without providing any definite terms for an offer.

The Court finds that the Letter constitutes a valid offer. Defendant has selectively chosen portions of the Letter to argue that the entire document is merely an invitation to negotiate as opposed to an offer of definite terms. In the paragraph immediately following the language Defendant cites, the Letter actually details two specific terms that comprise an offer. First, Plaintiff offers to execute a mutual general release in which each party would relinquish any claims it may have against the other. Second, Plaintiff offers to abstain from further distributing Defendant's test preparation materials online and in print.

Accordingly, the Court concludes that the language in the Letter objectively manifests a "willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *City of Moorpark* 819 P.2d at 860.

    b.  *Acceptance*

Contract acceptance is governed by the "mirror-image" rule, which dictates that "the terms proposed in an offer must be met exactly, precisely, and unequivocally for its acceptance to result in the formation of a binding contract." *Siegel v. Warner Bros. Entm't Inc.*, 542 F. Supp. 2d 1098, 1137 (C.D. Cal. 2008); *Chaganti v. I2 Phone Int'l, Inc.*, 635 F. Supp. 2d 1065, 1071 (N.D. Cal. 2007) ("An offer must clearly articulate the terms of the agreement and the acceptance must be absolute, unqualified and a mirror image of the offer.") (citation omitted).

Plaintiff claims that Defendant validly accepted his offer when it sent the Email stating, "[W]e are willing to terminate our relationship with you and your company according to the terms you have proposed, provided we can agree upon an appropriate release. If you have language for such a release in mind, please provide it." (Compl., Ex. A, ECF No. 1.) He characterizes the Email language as an unconditional acceptance with an intent to reduce the terms to a formal written agreement. In other words, Plaintiff contends that the limiting language in the Email—"provided we can agree upon an appropriate release"—simply communicates Defendant's intent to memorialize the terms in a more formal writing. *See Harris v. Rudin, Richman & Appel*, 87 Cal. Rptr. 2d 822, 828 (Ct. App. 1999) ("Where the writing at issue shows 'no more than an intent to further reduce the informal writing to a more formal one' the failure to follow it with a more formal writing does not negate the existence of the prior contract.").

For guidance on this issue, the Court turns to a pair of California appellate decisions that provide a framework in which to situate the present dispute.

In *Beck v. American Health Group International*, the plaintiff received a letter in which the defendant stated, "It is a pleasure to draft the outline of our future agreement. . . . When we have a draft, we will discuss it, and hopefully shall have a completed contract . . . in the very near future." 260 Cal. Rptr. 237, 242 (Ct. App. 1989). The plaintiff argued that by signing the letter, he created a valid binding contract with the defendant; the defendant disagreed and maintained that the letter was merely an "agreement to agree" in the future. *Id.* The court began its analysis by stating, "Whether a writing constitutes a final agreement or merely an agreement to make an agreement depends primarily upon the intention of the parties. In the absence of ambiguity this must be determined by a construction of the instrument taken as a whole." *Id.* at 241. The court then considered the plain meaning of the terms and concluded, "Taken in their ordinary sense, the words of the letter manifest an intention of the parties that no binding contract would come into being until the terms of the letter were embodied in a formal contract to be drafted by corporate counsel." *Id.* at 242.

The same factual scenario appeared in *Harris*, albeit with a different outcome. 87 Cal. Rptr. 2d 822 (Ct. App. 1999). In *Harris*, the plaintiff received a letter in which the defendant stated, "I am writing to confirm the essential terms of the settlement we reached today. . . . The office will prepare the initial draft of the settlement documents . . . ." *Id.* at 825. The parties disputed whether the letter created a binding contract. *Id.* at 828. The court distinguished the facts before it from *Beck* and held, "The Letter, drafted by [defendants'] own counsel and signed by [defendants], purports to embody the 'essential terms' of the agreement. It is signed under a signature block noting 'accepted and agreed.' It is thus far different from *Beck* where the writing itself was expressly denominated as an outline of a 'future agreement.'" *Id.* at 828-29.

From this pair of cases, the Court culls general principles to govern the instant dispute. First, where the complaint does not allege ambiguity in the contract, a court must construe the language of any purported contract on its face to divine the parties' objective intent. *Fleming v. Coverstone*, No. 08-CV-355, 2009 WL 764887, at *7 (S.D. Cal. Mar. 18, 2009) ("The Court construes the language of the [disputed] Email Exchange on its face because the SAC does not allege that it is ambiguous.") (citing *Beck*, 260 Cal. Rptr. at 243). Next, to determine whether a writing evinces an objective intent to be presently bound or merely an "agreement to agree" in the future, courts look to the plain language, construing each word in its ordinary sense. *Beck*, 260 Cal. Rptr. at 242 ("The words of a written instrument are generally to be understood in their ordinary and popular sense."). As *Beck* and *Harris* illustrate, courts are to determine whether the language of the purported contract indicates an intent to continue engaging in future negotiations or whether the language intends a definitive acceptance.

Applying these principles to the instant action, the Court first notes that it will construe the text of the contested Email on its face because Plaintiff does not allege that the language is ambiguous. The Court finds that the Email merely constitutes an "agreement to agree" in the future, *not* a definitive acceptance. While Defendant did acknowledge that it was willing to terminate the parties' relationship according to Plaintiff's proposed terms, it further stated that any termination would only occur "provided [the parties] can agree upon an appropriate release." (Compl., Ex. B, ECF No. 1.) The Email clearly stopped short of manifesting Defendant's unequivocal acceptance. Instead, Defendant expressly conditioned any purported acceptance on a future agreement and even suggested to Plaintiff, "If you have language for such a release in mind, please provide it." (*Id.*) By inviting Plaintiff to send proposed release language, the Email contemplated future negotiations over the precise terms of the release before any contract would be consummated. Therefore, the Court concludes that the Email was not an absolute acceptance but simply an agreement to continue negotiations in the future.

Accordingly, Plaintiff has failed to adequately plead a claim for breach of contract.

### C.      Breach of the Implied Covenant of Good Faith and Fair Dealing

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988) (quoting Rest. 2d Contracts § 205). The implied covenant of good faith and fair dealing does not exist independently; rather, it is a concomitant right that supplements the express terms of a valid contract. *Smith v. City & Cty. of San Francisco*, 275 Cal. Rptr. 17, 23 (Ct. App. 1990) ("The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract.").

"In order to state a claim for breach of an implied covenant of good faith and fair dealing, the specific contractual obligation from which the implied covenant of good faith and fair dealing arose must be alleged." *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1268 (C.D. Cal. 2010) (quoting another source). Because Plaintiff failed to state a claim for breach of contract, the Court also concludes that Plaintiff has failed to plead a claim for breach of the implied covenant of good faith and fair dealing.

### D.      Declaratory Relief

Plaintiff seeks a declaration that (1) Defendant is required to sign the mutual general release pursuant to the purported contract, and (2) Defendant breached the Licensing Agreement in August 2015 by terminating Plaintiff's license to use the LSAT questions.

1.      *Declaration as to Mutual General Release*

Plaintiff asks this Court to declare that Defendant must sign the mutual general release because the parties' Letter and Email purportedly created a legally binding contract. In light of the Court's holding above that Plaintiff has not adequately pled the existence of a contract, the Court dismisses the claim for declaratory judgment.

2.      *Declaration as to Licensing Agreement*

Plaintiff requests a declaratory judgment that Defendant breached the Licensing Agreement in August 2015. Given the gravamen of Plaintiff's claim—breach of the mutual general release—this second claim for breach of the Licensing Agreement comes as a surprise. Throughout the complaint, Plaintiff focuses exclusively on Defendant's alleged breach of the general release without once intimating that Defendant may also be liable for breach of the Licensing Agreement. The first mention of any purported breach of the Licensing Agreement comes in a cursory one-line allegation on the penultimate page of the complaint when Plaintiff asks for a declaratory judgment that "Defendant breached the material terms of the Licensing Agreement." (Compl. ¶ 26a, ECF No. 1.) Beyond that solitary naked assertion, Plaintiff does not allege a single fact pertaining to the alleged breach of the Licensing Agreement.

After reviewing the exhibits attached to the complaint, the Court is able to surmise the alleged Licensing Agreement breach. The Licensing Agreement contains a provision providing that Defendant must allow Plaintiff 30 days to cure any breach before terminating the contract. (Compl., Ex. D at 8, ECF No. 1.) The parties entered into the Licensing Agreement on July 15, 2015 and, according to Plaintiff's Letter, Defendant terminated the Licensing Agreement on August 4—a span of less than 30 days. (Compl., Ex. A, ECF No. 1) ("I was surprised and dismayed by your recent letter, dated *August 4th of this year.*") (emphasis added). The Court suspects that Plaintiff's theory of liability hinges on the 30-day cure provision.

In his Opposition to Defendant's Motion to Dismiss, Plaintiff argues that he sufficiently pled breach of the Licensing Agreement because the claim "is set forth in [the exhibits] to the Complaint, which [are] incorporated by reference." (Opp'n. Def.'s Mot. Dismiss at 14:10-11, ECF No. 23.) Such a position is untenable. Attached exhibits are no substitute for sufficiently pled facts. Nor is it the Court's responsibility to excavate Plaintiff's documents hoping to arrive at some discernible theory of liability. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) ("[I]t is not the task of courts to make cases for the parties . . . ."); *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

Accordingly, the Court concludes that Plaintiff has not pled sufficient facts to support a claim for declaratory relief as to breach of the Licensing Agreement.

**D.     Leave to Amend**

The Supreme Court has held, "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). "A proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997).

      1.      *Breach of Mutual General Release*

The Court has ruled that Defendant's Email does not constitute a valid acceptance, thereby foreclosing any claim that a mutual general release was formed between the parties. Plaintiff cannot plead any new facts to allege breach, or existence, of a mutual general release because the Court's holding has established, as a matter of law, that the plain language of the Email does not objectively manifest an intent to create a binding contract.

Therefore the Court dismisses with prejudice the claim alleging breach of the mutual general release and any of its derivative claims.

      2.      *Breach of Licensing Agreement*

Defendant argues that any amendment of the claim alleging breach of the Licensing Agreement would be futile because the Licensing Agreement itself contains a provision stating, "LSAC may terminate this license at its sole discretion at any time and for any reason." (Compl., Ex. D at 1, ECF No. 1.) According to Defendant, the cited provision conclusively forecloses any claim that it may have breached the Licensing Agreement by not providing 30 days to cure. Therefore, Defendant maintains, Plaintiff cannot allege any set of facts to plead breach of the Licensing Agreement. The Court disagrees.

Here, the Licensing Agreement contains two conflicting provisions about the conditions for termination. One section of the contract provides, "LSAC may terminate this license at its sole discretion at any time and for any reason." (Compl., Ex. D at 1, ECF No. 1.) Another portion of the contract states, "LSAC may terminate any license in the event that a licensee violates a material term or condition of the license, which is not cured by the licensee within 30 days after receipt of written notice of such violation from LSAC." (Compl., Ex. D at 8, ECF No. 1.)

Based on this conflicting language, Plaintiff could conceivably amend his complaint to allege that the Licensing Agreement is ambiguous, requiring extrinsic evidence to determine the proper interpretation. Under California law, "courts may not dismiss on the pleadings when one party claims that extrinsic evidence renders the contract ambiguous." *A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc., Bumble Bee Seafoods Div.*, 852 F.2d 493, 496 n.2 (9th Cir. 1988). Therefore, Plaintiff could possibly amend the complaint to state a claim for breach of contract by alleging that the Licensing Agreement is ambiguous. Of course, such an allegation does not guarantee success because if "the court decides that the contract is not reasonably susceptible to more than one interpretation, the court can reject the assertion of ambiguity." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1015 (9th Cir. 2012). Such a conclusion, however, is premature at this stage without any allegations of ambiguity or proffered extrinsic evidence. What is certain at this stage is that Plaintiff could potentially plead a set of facts stating a valid claim for breach of the Licensing Agreement.

Accordingly, the Court grants leave to amend Plaintiff's claim for breach of the Licensing Agreement.

## V.    CONCLUSION

In light of the foregoing, Defendant's Motion to Dismiss the Complaint is **GRANTED with prejudice** as to the following claims: (1) breach of the mutual general release, (2) breach of the implied covenant of good faith and fair dealing related to the mutual general release, and (3) declaratory judgment that Defendant must sign the mutual general release.

The Motion to Dismiss is **GRANTED with leave to amend** as to the claim alleging breach of the Licensing Agreement. Any amendment must be filed **within ten days**.

**IT IS SO ORDERED.**

                                                                                                                                                                                    :

Initials of Preparer